UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

TYSON POULOS,

            Plaintiff,

    -v-                                  No.  14CV3023-LTS

CITY OF NEW YORK et al.,

            Defendants.

--------------------------------------------------------x

## Memorandum Opinion And Order

       In this action, Plaintiff Tyson Poulos ("Poulos" or "Plaintiff") seeks damages against Defendants the City of New York (the "City"), the New York City Police Department ("NYPD"), the New York City Department of Correction ("DOC"), NYPD Commissioner William Bratton, DOC Commissioner Joseph Ponte, Police Officers Jamel Brown ("Brown") and Juana Ortiz ("Ortiz"), Corrections Officers Gordon, Jerrick and Thompson, inmate Christopher McFadden, and several John Doe Corrections Officers (collectively, "Defendants") in connection with claims arising from incidents of violence at an NYPD holding facility and on Rikers Island.  In his Amended Complaint, Plaintiff asserts numerous claims of federal civil rights violations, civil rights conspiracy claims, and municipal liability pursuant to Monell v. Department of Social Services of the City of New York,[1] as well as state law claims for

---

[1]    In Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978), the Supreme Court held that local government entities may be sued under 42 U.S.C. § 1983 only when the plaintiff can establish that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" upon which Plaintiff intends to sue.

harassment, intimidation, assault and battery, conspiracy, negligence, violations of the New York State Constitution, negligent hiring, training, supervision and retention, failure to provide medical treatment, intentional and negligent infliction of emotional distress, failure to protect, false arrest and imprisonment, and prima facie tort.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

Plaintiff now seeks a default judgment against Defendant Brown with respect to his claims of excessive force, false arrest and imprisonment, malicious prosecution and deliberate indifference to medical needs.  The Court has carefully reviewed Plaintiff's submission, which is unopposed.  For the reasons stated herein, the Court grants in part, and denies in part, Plaintiff's motion.

BACKGROUND[2]

Plaintiff filed this case on April 29, 2014 (see Docket Entry No. 1), asserting a number of federal and state civil rights violations against several defendants.  Defendant Brown was served with the original Summons and Complaint in this action on July 9, 2014, and an affidavit of service was filed with the Court on July 16, 2014.  (See Docket Entry No. 11.) Brown did not respond to the Complaint.  Brown was subsequently served with a summons and the Amended Complaint on December 24, 2014, and an affidavit of service was filed with the

---

[2]    The facts recited herein are drawn from Plaintiff's First Amended Complaint ("Amended Complaint") in this action.  (See Docket Entry No. 15.)  In light of Defendant Brown's failure to respond to the Amended Complaint, Plaintiff's well-pleaded factual allegations with respect to Brown are deemed admitted for the purposes of this motion practice.  See Fed. R. Civ. P. 8(b)(6); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability.").

Court on January 7, 2015.  (<u>See</u> Docket Entry No. 27.)  As of the date of this Memorandum

Opinion and Order, Brown has not appeared in this case and has not filed any responsive

pleadings.

                    Plaintiff alleges that, on or about May 4, 2013, he was arrested by NYPD officers,

taken to the 90th Precinct for processing, and transferred to Kings County Central Booking,

where he awaited arraignment.  (Amended Complaint ¶ 64.)  Plaintiff claims that, as a result of

his agoraphobia, he requested permission to use a restroom outside of the holding cell in which

he had been placed, and that his request was "met with ridicule" by Brown.  (<u>Id.</u> ¶¶ 65, 68.)

Plaintiff further claims that, in the evening hours of May 5, 2013, while still awaiting

arraignment, he continued to request medical attention for his agoraphobia and access to a

restroom outside of the holding cell.  (<u>Id.</u> ¶ 69.)  Plaintiff alleges that, in response to these

requests, Brown opened the door to the holding cell, reached into his pocket to grasp an

unknown object and, with the object held inside of his first, punched Plaintiff in the head.  (<u>Id.</u>)

Plaintiff claims that, as a result of this punch, he lost consciousness and suffered further physical

injuries, including blurred vision and a 3-inch long cut.  (<u>Id.</u> ¶¶ 2, 69, 86.)  Plaintiff further

claims that, at the time immediately prior to this attack, he was "not a threat, immediate or

otherwise, to PO Brown as he was confined within a holding cell at the time," and that Brown

intentionally entered the cell to punch him in retaliation for his repeated requests to use a

bathroom outside of the holding cell.  (<u>Id.</u> ¶¶ 70-71, 74.)  According to Plaintiff, his behavior

prior to Brown's assault was not "aggressive or confrontational" (<u>id.</u> ¶ 72), and at no time prior

to the assault did Brown or any other officer "attempt to defuse any perceived situation by

issuing a verbal command or warning to Plaintiff, by seeking intervention by mental health staff,

by using non-contact control techniques . . . or by applying control holds."  (<u>Id.</u> ¶ 73.)

Following this incident, Brown allegedly allowed Plaintiff to remain unconscious and bleeding profusely from the head for approximately two or three hours before notifying emergency personnel.  (Amended Complaint ¶¶ 4, 84.)  Plaintiff alleges that, when paramedics did eventually arrive at the scene, Officers Brown and Ortiz obstructed their efforts to provide Plaintiff with medical care and refused to permit the paramedics to transport Plaintiff to the hospital.  (Id. ¶ 85.)  Plaintiff claims that Brown and Ortiz thereafter attempted to cover up Brown's conduct and retaliate against Plaintiff for speaking out about the attack by filing false documents and giving false statements claiming that Plaintiff spit at Brown and told him that he was HIV positive.  (Id. ¶ 90.)  Plaintiff alleges that these documents and statements "result[ed] in Plaintiff being cited, re-arrested, prosecuted and further imprisoned" (id.), although he provides no further details regarding the charges or the consequences.  Plaintiff denies that he spit at Brown and alleges that he never claimed to be HIV positive.  (Id. ¶¶ 91-92.)  On or about May 7, 2013, Plaintiff was transferred from the custody and care of the NYPD to that of the DOC.  (Id. ¶ 93.)

<u>DISCUSSION</u>

Default Motion Standard

Federal Rule of Civil Procedure 55(b)(2) governs situations in which a plaintiff seeks entry of a default judgment for anything other than a sum certain.  See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  A plaintiff seeking a default judgment must first obtain an entry of default from the Clerk of Court, pursuant to Rule 55(a).  Thereafter, the plaintiff must seek a default judgment from the district court.  See Fed. R. Civ. P. 55(b)(2).  A plaintiff's argument for entry of a default judgment is strengthened when the

court can determine that default is willful, which is apparent in instances where the defendant's

"conduct . . .  is more than merely negligent or careless."   S.E.C. v. McNulty, 137 F.3d 732, 738

(2d Cir. 1998).  Furthermore, "[a] defendant's default is an admission of all well-pleaded factual

allegations in the complaint except those relating to damages."   Suggs v. Crosslands Transp. Inc.,

No. 13CV6731-ARR-MDG, 2015 WL 1443221, at *2 (E.D.N.Y. Mar. 27, 2015).  Therefore

"[w]ithout a response from [the defendant, a] Court must first determine whether the allegations in

Plaintiff's Complaint are sufficiently pleaded to establish [the defendant's] liability."   Lenard v.

Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012).  In so doing, the court must examine

whether the "allegations of Plaintiff's Complaint, taken as true, are sufficient to establish [the

defendant's] liability," with respect to the causes of action upon which a default judgment is

sought.  Id. at 528.


Defendant Brown's Conduct[3]

It is readily apparent that Brown's failure to appear in this action has been willful.

Brown was properly summoned and served with both the Complaint and Amended Complaint.

(See Docket Entry Nos. 11, 27.)  Service was properly effected in conformity with the

requirements of N.Y. C.P.L.R. § 308(2), and the affidavits of service filed with the Court

constitute prima facie evidence of effective service.  See Howard Johnson Intern., Inc. v. Wang,

7 F. Supp. 2d 336, 339 (S.D.N.Y. 1998).  Furthermore, at a February 13, 2015, conference,

Corporation Counsel  represented to the Court that it would forward to Brown all documentation

---

[3]      In light of the fact that Plaintiff's motion seeks a default judgment only against
Defendant Brown, the Court does not here consider the claims alleged in Plaintiff's
Second Cause of Action (captioned "42 U.S.C. §§ 1985 and 1986 Conspiracy by
Commissioner Bratton, Police Officer Jamel Brown, and Police Officer Juana Ortiz"),
as Plaintiff's conspiracy claims necessarily implicate the behavior of defendants who
are not parties to this motion.

relevant to Plaintiff's default motion practice, and subsequently filed certificates of service

indicate that Corporation Counsel was properly served with, and thereafter transmitted, the

relevant documents to Brown.  (See Docket Entry Nos. 38, 47-48.)  The Clerk of Court issued a

Certificate of Default with respect to Brown on March 3, 2015.  (See Docket Entry No. 41.)

        Brown's failure to respond to the Complaint, the Amended Complaint and this

motion practice after proper service is a clear indication of "willfulness" exceeding the

boundaries of "merely negligent or careless" activity.  McNulty, 137 F.3d at 738.  Moreover,

Brown has not come forward with any evidence of the existence of a meritorious defense to

Plaintiff's claims.  Thus, the Court is left to discern whether the allegations in Plaintiff's

Amended Complaint have been sufficiently pleaded  by examining whether the facts alleged, if

taken as true, are sufficient to establish Brown's liability with respect to the claims upon which

Plaintiff seeks the entry of a default judgment.

*Plaintiff's Excessive Use of Force Claim*

        Plaintiff's First Cause of Action, alleging civil rights violations, includes a claim

that Officer Brown utilized excessive force when he attacked Plaintiff in the holding cell.  (See

Amended Complaint ¶¶ 125, 128.)  "To make out a constitutional claim of excessive force, a

pretrial detainee must prove both an objective component (that the use of force was objectively

serious), and a subjective component (that the officials acted with a sufficiently culpable state of

mind)."  Ortiz v. Pearson, 88 F. Supp. 2d 151, 160 (S.D.N.Y. 1999).  In weighing these issues, a

court will consider the "need for the application of force, the relationship between the need and

the amount of force that was used, the extent of injury inflicted, and whether force was applied

in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the

very purpose of causing harm."  Id.  (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)); see

also Davidson v. Flynn, 32 F.3d 27, 20 (2d Cir. 1994).  When evaluating the objective

component, a court must determine whether the harm alleged is "objectively sufficiently serious

or harmful enough."  See U.S. v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999).  The injury suffered by

a plaintiff need not be "significant," but the amount of force used must be more than de minimis

to rise to the level of a constitutional violation.  See Hudson v. McMillan, 503 U.S. 1, 9-10

(1992).[4]  A plaintiff satisfies the subjective element of an excessive force claim by

demonstrating that the defendant acted with the necessary level of culpability, which is "shown

by actions characterized by wantonness."  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)

(internal quotation marks and citation omitted).

          Here, Plaintiff has pleaded facts that, if taken as true, sufficiently establish

Brown's use of excessive force.  Plaintiff has alleged that Brown punched him in the head while

grasping an object in his clenched fist (Amended Complaint ¶ 69); that Plaintiff suffered a long

open wound from which he bled profusely (id. ¶¶ 2, 4, 86); that Plaintiff suffered from blurry

and diminished vision following the assault (id. ¶ 2); and that Plaintiff lost consciousness as a

result of being punched.  (Id. ¶¶ 2, 86.)  All of these factors establish that Plaintiff suffered an

objectively serious injury at the hands of Defendant Brown.  Likewise, Plaintiff has pleaded

facts that satisfy the subjective element of the excessive force inquiry.  Plaintiff has alleged that,

at the time he was attacked by Brown, Plaintiff was not a threat (id. ¶ 71); that Brown punched

him in retaliation for his requests to use a bathroom outside of the holding cell (id. ¶ 70); that

Brown entered the holding cell with the intent to harm Plaintiff (id. ¶ 74); that Brown's use of

---

[4]        In Walsh, the Second Circuit held that the standard applicable to excessive force
        claims brought by pretrial detainees under the Fourteenth Amendment is the same as
        the standard for claims brought by convicted prisoners under the Eighth Amendment.
        See Walsh, 194 F.3d at 48.

force was grossly disproportionate to the existing circumstances (Amended Complaint ¶ 80); and that there was no reasonable justification for Brown's use of force, making it unnecessary and wanton.  (Id. ¶¶ 72, 75, 78-79, 81-83.)

Plaintiff has therefore sufficiently pleaded facts that, taken as true, fulfill both the objective and subjective prongs of the excessive force inquiry.  The Court grants Plaintiff's motion for default judgment against Brown insofar as it seeks a finding of liability with respect to Plaintiff's excessive use of force claim.

*Plaintiff's Malicious Prosecution Claim*

In his Fifth Cause of Action, Plaintiff asserts a claim of malicious prosecution against Officer Brown.  (See Amended Complaint ¶ 248.)  To establish such a claim under New York law, "a plaintiff must show[: (1)] that a proceeding was commenced or continued against him[; (2)] with malice and without probable cause[;] and [(3) that it] was terminated in his favor."  Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002).  While Plaintiff does allege that Brown executed and filed false official documents and gave false sworn testimony against him for the purpose of prosecuting and further imprisoning Plaintiff, and that Brown acted without probable cause in doing so (see Amended Complaint ¶¶ 90-92), Plaintiff fails to allege that any proceedings were terminated in his favor.  Indeed, Plaintiff does not allege any facts respecting the disposition of any such proceedings and thus has failed to sufficiently plead a malicious prosecution claim against Brown.  The Court therefore denies Plaintiff's motion for a default judgment against Brown insofar as it seeks a finding of liability with respect to his malicious prosecution claim.

*Plaintiff's False Imprisonment/False Arrest Claim*

Plaintiff's Ninth Cause of Action asserts a claim of false arrest and false

imprisonment against Officer Brown.  (See Amended Complaint ¶¶ 281-83.)  The Second

Circuit has noted that "[t]he common law tort of false arrest is a species of false imprisonment,

and the claims therefore are comprised of the same elements."  See Singer v. Fulton County

Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).  "Under New York law, the elements of a false

imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff

was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the

confinement was not otherwise privileged.'"  Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996)

(quoting Singer, 63 F.3d at 118).  The same elements are analyzed in the context of a false

imprisonment claim brought pursuant to the federal Constitution.  See Hygh v. Jacobs, 961 F.2d

359, 366 (2d Cir. 1992) ("[t]he elements of a claim of false arrest under § 1983 are substantially

the same as the elements of a false arrest claim under New York law") (internal quotation marks

and citation omitted).

        Here, Plaintiff's false arrest/false imprisonment claim appears to be based on the

factual allegations underlying his malicious prosecution claim, in that he asserts that Defendant's

filing of "false criminal charges" led to him "being re-arrested, prosecuted and imprisoned."

(See Amended Complaint ¶ 282.)  As explained above, Plaintiff has not sufficiently pleaded his

malicious prosecution claim.  Furthermore, while Plaintiff may have pleaded facts that satisfy

the first three elements of his false imprisonment claim, he has not properly alleged that his

confinement was not privileged.  Plaintiff does not allege any facts regarding his "re-arrest" or

the nature, reason, or timing of any prosecution and custody arising from the allegedly false

charges.  The Court therefore denies Plaintiff's motion for a default judgment against Brown

insofar as it seeks a finding of liability with respect to his false arrest/false imprisonment claim.

*Plaintiff's Deliberate Indifference to Medical Needs Claim*

Plaintiff's First Cause of Action includes a claim that Officer Brown was deliberately indifferent to his medical needs following the alleged assault.  (See Amended Complaint ¶¶ 125, 137.)  "[T]he official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." Weyant, 101 F.3d at 856; see also Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009) ("We think, then . . . that an injured state pretrial detainee, to establish a violation of his Fourteenth Amendment due process rights, must prove, inter alia, that the government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware.").  Like an excessive force claim, a claim for deliberate indifference to medical needs contains both an objective and a subjective element, in that a defendant "must first show that his medical condition is objectively a serious one.  Then, [he] must show . . . that the defendant acted with deliberate indifference to [his] medical needs."  Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003).  The Second Circuit has noted that "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition," and therefore a court will examine "a non-exhaustive list of . . . factors, including: (1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Id. at 162 (internal quotation marks and citation omitted).  To demonstrate a subjectively culpable state of mind, a Plaintiff must show that a defendant "knows of and disregards an excessive risk to inmate health or safety," id. at 164 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)), or that "the charged official act[ed] or

fail[ed] to act while actually aware of a substantial risk that serious inmate harm [would] result."
See Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

Plaintiff has pleaded facts that, if accepted as true, sufficiently establish that
Brown demonstrated deliberate indifference to his medical needs.  As already noted, Plaintiff has
alleged that he lost consciousness and suffered serious injuries as a result of Brown's assault,
which satisfies the objective prong of the inquiry.  (See Amended Complaint ¶¶ 2, 4, 69, 86-87.)
Plaintiff has also pleaded facts demonstrating that Brown delayed his access to medical attention
by up to three hours although Plaintiff was unconscious and bleeding profusely (id. ¶ 84) and
that, when paramedics did finally arrive at the scene, Brown obstructed their efforts to provide
Plaintiff with medical attention and would not let them take him to the hospital.  (Id. ¶ 85.)
Because Plaintiff has pleaded that Brown perpetrated the attack that left him in need of medical
attention, he has clearly demonstrated that Brown knew of the risk to Plaintiff's health and
safety, and that he deliberately ignored this risk, which prolonged and increased Plaintiff's
suffering.  (Amended Complaint ¶¶ 88-89.)  Because Plaintiff's allegations, taken as true, satisfy
both the objective and subjective prongs of the deliberate indifference to medical needs standard,
the Court grants Plaintiff's motion for a default judgment against Brown insofar as it seeks a
finding of liability with respect to this claim.

<span style="text-align:center">C<span style="font-variant:small-caps">ONCLUSION</span></span>

For the reasons stated above, the Court grants Plaintiff's motion for a default judgment against Brown insofar as it seeks a finding of liability with respect to Plaintiff's excessive use of force and deliberate indifference to medical needs claims.  The Court denies Plaintiff's motion as to liability in all other respects.

An inquest into damages will be conducted in connection with the trial of this action.

This Memorandum Opinion and Order resolves Docket Entry Number 43.

SO ORDERED.

Dated: New York, New York
       June 17, 2015

　　　　　　　　　　　　　　 /s/  Laura Taylor Swain　　
                            LAURA TAYLOR SWAIN
                            United States District Judge