UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TYSON POULOS,

       Plaintiff,

   -v-                              No.  14CV3023-LTS

CITY OF NEW YORK et al.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

         In this civil rights action, Plaintiff Tyson Poulos ("Poulos" or "Plaintiff") has asserted claims against Defendants the City of New York (the "City"), the New York City Police Department ("NYPD"), the New York City Department of Correction ("DOC"), NYPD Commissioner William Bratton, DOC Commissioner Joseph Ponte, Police Officers Jamel Brown ("Brown") and Juana Ortiz ("Ortiz"), Corrections Officers Gordon, Jerrick and Thompson, inmate Christopher McFadden ("McFadden") and several John Doe Corrections Officers (collectively "Defendants") in connection with several incidents that occurred at an NYPD holding facility and on Rikers Island.  Plaintiff's claims include federal civil rights violations as well as state law claims for harassment, intimidation, assault and battery, and intentional and negligent infliction of emotional distress.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

         McFadden was served with the Complaint on May 20, 2014 by personal service, and on May 21, 2014, by mail (see Docket Entry No. 6), and was served with the Amended Complaint on November 6, 2014 by personal service, and on November 7, 2014, by mail.  (See

Docket Entry No. 25.)  Service was properly effected in conformity with the requirements of

N.Y. C.P.L.R. § 308(2), and the affidavits of service filed with the Court constitute <u>prima facie</u>

evidence of effective service.  <u>See</u> <u>Howard Johnson Intern, Inc. v. Wang</u>, 7 F. Supp. 2d 336, 339

(S.D.N.Y. 1998).  McFadden has not entered an appearance or otherwise responded to the

Complaint or the Amended Complaint.  The Clerk of Court entered a certificate of his default on

March 3, 2015.  (<u>See</u> Docket Entry No. 40.)  Plaintiff now moves for a default judgment,

pursuant to Federal Rule of Civil Procedure 55, against Defendant McFadden, with respect to his

claims of harassment, intimidation, assault and battery.  The motion papers were served on

McFadden by mail on July 9, 2015.  (<u>See</u> Docket No. 55.)  McFadden has filed nothing in

response to the motion.  The Court has carefully reviewed Plaintiff's unopposed submission.

For the reasons explained below, Plaintiff's motion is granted.


<u>B<small>ACKGROUND</small></u>[1]

On or about May 4, 2013, Plaintiff was arrested by NYPD officers, taken to the

90th Precinct for processing, and transferred to Kings County Central Booking, to await

arraignment.  (Am. Compl. ¶ 64.)  After being transferred from the custody and care of the

NYPD to that of the New York City Department of Corrections, Plaintiff was assigned by the

DOC to be housed at AKMC, 11 Mod, on Rikers Island.  (<u>Id</u>. ¶¶ 93-94.)  According to Plaintiff,

fellow inmate McFadden was also assigned to be housed at AKMC, 11 Mod, on Rikers Island.

---

[1]     The facts recited here are drawn from Plaintiff's First Amended Complaint ("Am.
Compl.") in this action.  (<u>See</u> Docket No. 15.)  In light of Defendant McFadden's
failure to respond to the Amended Complaint, Plaintiff's well-pleaded factual
allegations with respect to McFadden are deemed admitted for the purposes of this
motion practice.  <u>See</u> Fed. R. Civ. P. 8(b)(6); <u>Greyhound Exhibitgroup, Inc. v.
E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is
deemed to constitute a concession of all well pleaded allegations of liability.").

(Am. Compl. ¶ 108-09.)  Plaintiff claims that, on or about July 5, 2013, McFadden approached Plaintiff while Plaintiff was using the telephone and, in an unprovoked attack, punched Plaintiff several times in the face.  (Id. ¶ 111.)  According to Plaintiff, DOC officers pulled McFadden off of Plaintiff, and Plaintiff suffered no significant physical injuries from the attack.  (Id.)

Following this initial attack, Plaintiff and McFadden were brought to the central booking office.  (Id. ¶ 112.)  While the two were confined in separate cells, McFadden threw food at Plaintiff through the cell bars and verbally threatened him.  (Id.)  At that point, a DOC supervisor instructed an officer or staff member to reassign Plaintiff and McFadden to separate housing areas, as McFadden appeared likely to start another fight with Plaintiff should the two see each other again.  (Id. ¶¶ 112-13.)  The next morning, McFadden was, without explanation, reassigned to the same housing area as Plaintiff.  (Id. ¶ 114.)  Upon entering Plaintiff's housing area, McFadden approached Plaintiff while he lay sleeping and punched him repeatedly in the head and face, causing Plaintiff to suffer three fractures to his jaw, as well as psychological and emotional injuries.  (Id. ¶ 115.)   Plaintiff was eventually sent to Bellevue Hospital Center, where he underwent surgery to have plates and screws implanted into his jaw.  (Id. ¶ 119.)  He remained in the hospital for over a week.  (Id.)  As a result of his injuries, Plaintiff has experienced prolonged pain and suffering, and he has difficulty breathing, speaking and eating. (Id. ¶¶ 118, 122.)

Upon Plaintiff's return to DOC custody, on or about July 13, 2013, Plaintiff was assigned to housing area 16 Upper at AMKC, where McFadden was also assigned.  (Id. ¶ 120.) Plaintiff claims that this assignment caused him to fear for his safety until Plaintiff was transferred to a different housing area later that day.  (Id.)

<u>DISCUSSION</u>

Federal Rule of Civil Procedure 55(b)(2) governs a plaintiff's request for a default judgment seeking anything other than a sum certain.  <u>See</u> Fed. R. Civ. P. 55(b)(2); <u>see also</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993).  A plaintiff seeking a default judgment must first obtain an entry of default from the Clerk of Court, pursuant to Rule 55(a).  Thereafter, the plaintiff must seek a default judgment from the district court.  <u>See</u> Fed. R. Civ. P. 55(b)(2).  Furthermore, "[a] defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages."  <u>Suggs v. Crosslands Transp. Inc.</u>, No. 13CV6731-ARR-MDG, 2015 WL 1443221, at *2 (E.D.N.Y. Mar. 27, 2015).  Therefore, when a defendant fails to appear or respond, the court must determine "whether the allegations in Plaintiff's Complaint are sufficiently pleaded to establish [the defendant's] liability."  <u>Lenard v. Design Studio</u>, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012) (citing <u>Bambu Sales, Inc. v. Ozak Trading Inc.</u>, 58 F.3d 849, 854 (2d Cir. 1995)).  In undertaking such an inquiry, the court examines whether the "allegations of Plaintiff's Complaint, taken as true, are sufficient to establish [the defendant's] liability," with respect to the causes of action upon which a default judgment is sought.  <u>Lenard</u>, 889 F. Supp. 2d at 528.  A plaintiff's argument for entry of a default judgment is strengthened when the court can determine that a defendant's default is "willful," which is indicated by "conduct that is more than merely negligent or careless."  <u>S.E.C. v. McNulty</u>, 137 F.3d 732, 738 (2d Cir. 1998).

The Court finds that McFadden's failure to appear or respond in this action is properly deemed willful.  As outlined above, while McFadden was properly served with the Summons, Complaint, Amended Complaint and Motion for Default for Judgment, he has responded to none of them and has not yet entered an appearance.  McFadden's failure to

respond to the Complaint, the Amended Complaint and the instant motion for default judgment

constitutes "conduct that is more than merely negligent or careless," and thus establishes

"willfulness" for the purposes of this default motion practice.  McNulty, 137 F.3d at 738.

Furthermore, McFadden has not proffered any evidence of the existence of a meritorious defense

to Plaintiff's claims.  Thus, the Court turns to the question of whether the allegations in

Plaintiff's Amended Complaint have been sufficiently pleaded.

       In the first of the state law claims asserted in the Amended Complaint, Plaintiff

alleges that McFadden "harassed, intimidated, assaulted and battered" Plaintiff in the course of

the three encounters described above.  (Am. Compl. ¶ 226.)  The sufficiency of Plaintiff's

allegations in support of assault and battery claims is clear.  "Under New York law, '[a]n assault

is an intentional placing of another person in fear of imminent harmful or offensive contact.  A

battery is an intentional wrongful physical contact with another person without consent.'"

Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001) (quoting United Nat'l Ins. Co v.

Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993)).  Plaintiff has pleaded facts

that, taken as true, establish that McFadden committed at least one act of assault and three

separate acts of battery against Plaintiff.  Plaintiff has alleged that McFadden approached him

while he was using the telephone and, without provocation, punched him in the face several

times.  (See Am. Compl. ¶ 111.)  Plaintiff has also alleged that, in a separate incident, while they

were confined to separate cells McFadden threw food at Plaintiff through his cell's bars and

verbally threatened him.  (Id. ¶  112.)  Lastly, Plaintiff has alleged that, upon being relocated to

Plaintiff's housing area, McFadden approached Plaintiff as he slept and punched his head and

face repeatedly, causing three fractures to his jaw, which required extensive medical treatment,

and caused him severe pain and suffering.  (Am. Compl. ¶¶ 115, 118-19.)  Each of these

altercations involved intentional, unwanted, physical contact, and thus sufficiently make out Plaintiff's claim of battery.  Plaintiff's allegations of threats and the throwing of food while he and McFadden were in the holding cells provide sufficient support for his claim of assault.  The requisite fear of harmful imminent contact can also be inferred from Plaintiff's allegations concerning the initial unprovoked attack while Plaintiff was using the telephone.

    Plaintiff's First state law cause of action also asserts claims for "harassment" and "intimidation"; his Seventh state law cause of action, which is asserted against all "defendants," claims damages for intentional and negligent infliction of emotional distress.  Courts are divided as to whether New York law recognizes harassment as an independent tort.  Compare Wells v. Town of Lenox, 974 N.Y.S.2d 591, 593 (N.Y. App. Div. 3rd Dep't 2013) ("New York does not recognize a common law cause of action to recover damages for harassment.") (quoting Monreal v. New York State Dept. of Health, 834 N.Y.S.2d 332, 334 (N.Y. App. Div. 2007)) with Daniel v. Safir, 175 F. Supp. 2d 474, 481 (E.D.N.Y. 2001) ("[A]n implied private right of action for criminal harassment is recognized under New York law.").  Claims of damages arising from intimidating conduct are analyzed variously under a standard inferred from a criminal harassment statute or as claims of intentional infliction of emotional distress and, where courts have found that the law permits a cause of action for harassment, they have often separately analyzed claims for intentional infliction of emotional distress.  See e.g., Long v. Beneficial Finance Co., 330 N.Y.S.2d 664 (N.Y. App. Div. 4th Dep't 1972) (analyzing private party's civil claim of harassment by reference to New York Penal Law § 240.25 and analyzing separate claim for intentional infliction of emotional distress under state tort common law); Galella v. Onassis, 487 F.2d. 986, 994 n.11 (2d Cir. 1973) (noting, without discussion, that the trial court found Galella guilty of both harassment and intentional infliction of emotional distress); Prignoli v.

City of New York, 94CIV4125-KMW, 1996 WL 340001 at *6 (S.D.N.Y. June 19, 1996)

(analyzing claim for intentional infliction of emotional distress as independent claim and

recognizing that  "New York courts have implied a private right of action from the language of

the New York criminal statute that proscribes harassment"); Blasetti v. Pietropolo, 213 F.Supp.

2d 425, 428 (S.D.N.Y. 2002) (analyzing claim for intentional infliction of emotional distress as

independent claim and holding that "New York . . . recognizes an implied private right of action

for criminal harassment in violation of the Penal Law.").  Courts have also recognized a cause of

action for harassment without separately considering a claim of intentional infliction of

emotional distress.  See e.g., Spock v. U.S., 464 F. Supp. 510, 516 (S.D.N.Y. 1978) (recognizing

that "courts have implied a right of action from a violation of the New York criminal statute

which proscribes harassment" without discussing any claim of intentional infliction of emotional

distress); True v. New York State Dept. of Correctional Services, 613 F. Supp. 27, 33 (W.D.N.Y.

1984) (holding that "plaintiff's harassment claim, derived from section 240.25 of New York's

Penal Law, states a valid cause of action under New York law" without discussing any claim for

intentional infliction of emotional distress); Daniel v. Safir, 175 F. Supp. 2d 474, 481 (E.D.N.Y.

2001) (holding that "an implied private right of action for criminal harassment is recognized

under New York law" without discussing a claim for intentional infliction of emotional distress).

        Given that there is a split in authority as to whether harassment constitutes an

independent tort under New York law, the Court will treat Plaintiff's claims for harassment and

intimidation as a single tort claim upon which relief may be granted either as a private cause of

action derived from the New York Penal Law, or as an independent claim for intentional

infliction of emotional distress.  Under New York Penal Law 240.25, "[a] person is guilty of

harassment in the first degree when he or she intentionally and repeatedly harasses another

person by following such person in or about a public place or places or by engaging a course of conduct or by repeatedly committing acts which places [sic] such person in reasonable fear of physical injury."  N.Y. Penal Law § 240.25 (McKinney 2015).  Similarly, "[t]he state law tort of intentional infliction of emotional distress has four elements:  (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."  Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996).  Here, Plaintiff claims that McFadden verbally threatened him, threw food at him, intentionally and outrageously attacked him physically on two occasions, and that Plaintiff feared for his life and safety and suffered psychological and emotional injuries. Plaintiff's uncontroverted allegations are sufficient to warrant judgment in his favor on his claim of harassment and intimidation, whether analyzed as an independent cause of action or as a species of intentional infliction of emotional distress.

Accordingly, the Court finds that Plaintiff has sustained his burden of establishing McFadden's liability to him on the claims asserted in Plaintiff's First and Seventh causes of action.

<u>CONCLUSION</u>

For the reasons stated above, the Court grants Plaintiff's motion for a default judgment against McFadden insofar as it seeks a finding of liability.  An inquest into damages will be conducted in connection with the trial of this action.

This Memorandum Opinion and Order resolves Docket Entry Number 52.  The next conference in this case will be held on **January 29, 2016, at 11:00 a.m.**

SO ORDERED.

Dated:  New York, New York
        January 19, 2016

   /s/  Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge