UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TYSON POULOS,

                        Plaintiff,

     -against-

CITY OF NEW YORK, POLICE OFFICER JAMEL
BROWN, Shield No. 10416, individually and in his official
capacity, POLICE OFFICER JUANA ORTIZ, Shield No.
8870, individually and in her official capacity,
CORRECTION OFFICER SUBERNIA GORDON-
HACKSHAW, Shield No. 12727, individually and in her
official capacity, CORRECTION OFFICER GREGORY
JERRICK, Shield No. 5217, individually and in his official
capacity, CORRECTION OFFICER PATRICIA
THOMPSON, Shield No. 3174, individually and in her
official capacity, CORRECTION OFFICERS JOHN DOE,
fictitious names used to identify presently unknown
correction officers, individually and in their official
capacities, and CHRISTOPHER MCFADDEN,

                        Defendants.
-------------------------------------------------------------------X

Docket No. 14 CV 3023 (LTS)

**SECOND VERIFIED AMENDED
COMPLAINT**

Jury Trial Demanded

      Plaintiff, TYSON POULOS, by his attorneys, HELD & HINES, LLP, as and for his

Second Verified Amended Complaint, hereinafter states and alleges as follows upon information

and belief:

<u>**PRELIMINARY STATEMENT**</u>

      1.     Plaintiff commences this action seeking compensatory damages, punitive

damages, and attorney's fees for violations of his civil, statutory and common law rights by the

defendants, their agents, servants and/or employees, while acting under color of law, as said

rights are secured by the Constitution of the United States of America, 42 U.S.C. §1983 *et seq*.,

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq*., and Section

504 of the Rehabilitation Act, 29 U.S.C. §794. Plaintiff also asserts supplemental state law

claims for violations of his rights secured by the Constitution of the State of New York, as well as Article 15 of the New York State Executive Law ("NYS Human Rights Law"), Section 40 *et seq*. of the New York State Civil Rights Law (the "NYS Civil Rights Law"), and Sections 8-107 *et seq*., 8-502 *et seq*. and 8-603 *et seq*. of the Administrative Code of the City of New York (the "City Human Rights Law"), Section 500-b of the New York State Correction Law, ("Correction Law"), as well as common law claims of assault, battery, false arrest, false imprisonment, malicious prosecution, negligent hiring, training and retention, neglect and failure to provide medical treatment, general negligence, intentional and negligent infliction of emotional distress, and failure to protect.

2.      On or about May 5, 2013, while in the custody of the New York City Police Department ("NYPD") at Kings County Central Booking ("Central Booking") following his arrest the day prior, Plaintiff fell victim to an unprovoked and excessive use of force by Defendant Police Officer Jamel Brown ("PO Brown").  As a result of the aforesaid assault, Plaintiff was caused to lose consciousness and suffer a 3 inch long, 2 cm deep cut above his right eye and blurry and diminished vision, as well as psychological and emotional injuries.

3.      Following same, and in an attempt to cover-up and/or conceal their unlawful conduct and/or in retaliation for Plaintiff exercising his First Amendment rights and speaking truthfully about said incident with the NYPD's Internal Affairs Division, Defendants PO Brown and Police Officer Juana Ortiz ("PO Ortiz") took specific action to ensure that Plaintiff would be re-arrested and further imprisoned by falsely claiming that Plaintiff had spit on or at PO Brown and told him that he was HIV positive.

4.      Additionally, Plaintiff was denied access to reasonable and timely medical care and treatment following said use of force in that PO Brown, PO Ortiz and/or other NYPD

officers and staff allowed Plaintiff to remain unconscious and profusely bleeding from his head for approximately two (2) hours prior to notifying emergency medical personnel.

5.    Thereafter, on or about May 7, 2013, the NYPD transferred Plaintiff to the custody and control of the New York City Department of Correction ("DOC").  On or about May 13, 2013, Defendant Correction Officers Gordon-Hackshaw ("CO Gordon"), Jerrick ("CO Jerrick") and Thompson ("CO Thompson"), instigated, provoked, taunted and coerced an inmate known to them to be a dangerous and violent gang member to assault and batter the plaintiff[1]. After said inmate punched Plaintiff approximately ten (10) times in his head, CO Gordon, Jerrick and/or Thompson intervened and sprayed Plaintiff and said inmate with chemical agents (oleoresin capsicum pepper spray).  Thereafter, said officer(s) and/or other DOC personnel failed to timely and properly decontaminate Plaintiff, as required by law and protocol.

6.    Approximately two (2) months later, on or about July 5, 2013, Defendant Christopher McFadden ("McFadden"), an inmate, started a verbal altercation with Plaintiff over his telephone usage and then punched Plaintiff in the face.  DOC officers responded and ended the conflict prior to significant injury by either individual.  Later that evening, Plaintiff and McFadden were reassigned to different housing areas.  The following morning, approximately twelve (12) hours after they had been ordered to be housed apart from each other, DOC inexplicably modified McFadden's housing assignment and moved him into Plaintiff's assigned housing area.  Upon McFadden entering the plaintiff's housing area, he approached Plaintiff as he lay asleep in his bed and began to punch Plaintiff in the head and face several times, causing Plaintiff to suffer significant physical injuries, including but not limited to three (3) fractures to his jaw, as well as psychological and emotional injuries.

---

[1] Plaintiff is not a member of nor affiliated with a gang.

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. §1983; the First, Fourth, Fifth,

Eighth and Fourteenth Amendments to the Constitution of the United States of America; the

Constitution of the State of New York; the Correction Law of the State of New York; the NYS

Human Rights Law; the NYS Civil Rights Law; the City Human Rights Law; and the Charter

and Administrative Code of the City of New York.

8.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3)

and (4) and the aforesaid statutory and constitutional provisions.

9.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims

which arise under the relevant provisions of New York state law.

10.     Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988,

which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought

pursuant to 42 U.S.C. §1983, as well as New York C.P.L.R. Art. 86 and City Human Rights Law

§8-502(f) for pendent claims arising under New York state and local law.

11.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a

substantial part of the events or omissions giving rise to this claim occurred within Bronx

County, New York, which is within this judicial district.

## PARTIES

12.     At all times mentioned herein, the plaintiff was and remains a resident of the State

of New York.

13.     Upon information and belief, and at all times mentioned herein, the defendant,

City of New York (hereinafter referred to as the "City"), was and remains a body corporate and

politic, constituting a municipal corporation, duly organized and existing under and by virtue of

the laws of the State of New York.

14.     Upon information and belief, and at all times mentioned herein, the City maintains the New York City Police Department (hereinafter referred to as the "NYPD"), pursuant to law.

15.     Upon information and belief, and at all times mentioned herein, the NYPD was and remains under the supervision and control of the City.

16.     Upon information and belief, and at all times mentioned herein, the NYPD was and remains a department, division or agency of the City.

17.     Upon information and belief, and at all times mentioned herein, the City maintains the City of New York Department of Correction (hereinafter referred to as the "DOC"), pursuant to law.

18.     Upon information and belief, and at all times mentioned herein, the DOC was and remains under the supervision and control of the City.

19.     Upon information and belief, and at all times mentioned herein, the DOC was and remains a department, division or agency of the City.

20.     Pursuant to Section 434 of the New York City Charter ("Charter"), the NYPD Commissioner shall have cognizance and control of the government, administration, disposition and discipline of the police department, and of the police force of the department. The commissioner shall be the chief executive officer of the police force.  He shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department.

21.     Pursuant to Section 500-c, subd. 2, of the New York State Correction Law, the DOC Commissioner has custody of the correctional facilities within the City of New York,

including but not limited to the correctional facility where the subject incident occurred.

22.     Pursuant to Section 500-c, subd. 4, of the New York State Correction Law, the plaintiff was confined to the custody of the DOC Commissioner.

23.     Pursuant to Section 623, subd. 1, of the New York City Charter, the DOC Commissioner is charged with managing the custody and care of the plaintiff.

24.     Pursuant to Section 623, subd. 5, of the New York City Charter, the DOC Commissioner has "[a]ll authority in relation to the custody and transportation of persons held for any cause in criminal proceedings…who require hospital care", including but not limited to the plaintiff herein.

25.     The NYPD Commissioner has custody of the precincts and Central Booking facilities located within the City of New York, including but not limited to Kings County Central Booking, where the subject incident occurred.

26.     Plaintiff was confined to the custody of the City and NYPD at Kings Central Booking.

27.     The City, through the NYPD and DOC, have all authority in relation to the custody and transportation of persons held for any cause in criminal proceedings who require hospital care, including but not limited to the plaintiff herein.

28.     At all times mentioned herein, Defendant Police Officer Jamel Brown ("PO Brown"), was an NYPD police officer[2] employed by the City.

29.     PO Brown is sued herein in his individual and official capacities.

30.     At all times mentioned herein, Defendant Police Officer Juana Ortiz ("PO Ortiz"), was an NYPD police officer employed by the City.

---

[2] As used herein, the term "police officer" is intended to refer to New York City Police Department officers in the general and not to any specific rank, title or position.

31.     PO Ortiz is sued herein in her individual and official capacities.

32.     At all times mentioned herein, Defendant Correction Officer Subernia Gordon-Hackshaw, Shield No. 12727 ("CO Gordon"), was a DOC correction officer[3] employed by the City.

33.     CO Gordon is sued herein in her individual and official capacities.

34.     At all times mentioned herein, Defendant Correction Officer Gregory Jerrick, Shield No. 5217 ("CO Jerrick"), was a DOC correction officer employed by the City.

35.     CO Jerrick is sued herein in his/her individual and official capacities.

36.     At all times mentioned herein, Defendant Correction Officer Patricia Thompson, Shield No. 3174 ("CO Thompson"), was a DOC correction officer employed by the City.

37.     CO Thompson is sued herein in his/her individual and official capacities.

38.     At all times mentioned herein, Defendant Correction Officers John Doe ("CO John Does"), were DOC correction officers employed by the City.

39.     The identities of the CO John Does are not presently known, but they are believed to be correction officers and supervisory personnel endowed and bestowed with various ranks and appointments upon them by the City and/or DOC, and are sued in their capacities as individuals as well as in their official capacities as correction officers acting under the color of law.

40.     The CO John Does were those individuals involved in assigning Plaintiff and McFadden to the same housing area after the subject incidents of July 5 and July 6, 2013; the individuals who failed to timely and adequately decontaminate Plaintiff following the pepper spray incident; the individuals who denied and/or delayed Plaintiff's access to medical care and

---

[3] As used herein, the term "correction officer" is intended to refer to City of New York Department of Correction officers in the general and not to any specific rank, title or position.

treatment, prescribed medications and/or a liquid diet following the May 13, 2013 incident; the individuals who failed to report or truthfully report the incidents alleged herein; and the individuals who failed to schedule and arrange medical appointments and follow-up care for Plaintiff, including but not limited to transportation to and from said appointments.

41.     At all times mentioned herein, Defendant Christopher McFadden ("McFadden"), was a prisoner confined to the custody, control and care of the City, its agents, servants and/or employees.

42.     Upon information and belief, and at all times mentioned herein, McFadden was a member of a gang.

43.     Upon information and belief, and at all times mentioned herein, the City, its agents, servants and/or employees, including but not limited to the defendant correction officers, had notice, both actual and constructive, that McFadden was a dangerous and violent gang member.

44.     Upon information and belief, and at all times mentioned herein, the City, its departments, agents, servants and/or employees, owned, operated, maintained, managed, supervised, directed and/or controlled the jails and correctional facilities within the City of New York, including but not limited to, Kings Central Booking and the Anna M. Kross Center (hereinafter "AMKC") located on Rikers Island.

45.     Upon information and belief, and at all times mentioned herein, the NYPD, its departments, agents, servants and/or employees, owned, operated, maintained, managed, supervised, directed and/or controlled the jails and police precincts within the City of New York, including but not limited to Kings Central Booking.

46.     Upon information and belief, and at all times mentioned herein, the DOC, its

departments, agents, servants and/or employees, owned, operated, maintained, managed, supervised, directed and/or controlled the jails and correctional facilities within the City of New York, including but not limited to AMKC.

47.    Upon information and belief, and at all times mentioned herein, the City was charged with the hiring, training, retention, direction, supervision, discipline, oversight, appointment and promotion of the NYPD and DOC officers, supervisors and staff in their employ, including but not limited to the defendant police and correction officers herein.

48.    Upon information and belief, and at all times mentioned herein, the City, its departments, agents, servants and/or employees, managed, supervised, directed and/or controlled the custody, confinement, care and treatment of those persons arrested, confined and/or otherwise detained in its various jails, including but not limited to the plaintiff.

49.    Upon information and belief, and at all times mentioned herein, the NYPD, its agents, servants and/or employees, managed, supervised, directed and/or controlled the custody, confinement, care and treatment of those persons arrested, confined and/or otherwise detained in its various precincts and jails, including but not limited to the plaintiff.

50.    Upon information and belief, and at all times mentioned herein, the DOC, its agents, servants and/or employees, managed, supervised, directed and/or controlled the custody, confinement, care and treatment of those persons confined and/or detained in its various jails, including but not limited to the plaintiff.

51.    At all times mentioned herein, the defendants assumed the custody and care of the plaintiff.

52.    At all times mentioned herein, the defendants were entrusted with the custody and care of the plaintiff.

53.     At all times hereinafter mentioned, the defendants assumed a duty of care to the plaintiff.

54.     At all times hereinafter mentioned, the defendants owed a duty of care to the plaintiff.

55.     At all times hereinafter mentioned, the defendants owed a special duty of care to the plaintiff.

56.     As alleged herein, PO Brown and PO Ortiz used excessive physical force on Plaintiff; assaulted and battered Plaintiff without legal justification; violated Plaintiff's civil and constitutional rights while acting under color of state law; drafted and filed, or conspired to file, knowingly false disciplinary reports, incident reports, criminal reports, and medical reports regarding the subject incident; ignored, refused, denied, and/or delayed Plaintiff's requests for medical attention for the injuries alleged herein; gave knowingly false statements; and/or took specific and definitive measures to cover up evidence of their unlawful activities.

57.     As alleged herein, CO Gordon, CO Jerrick, CO Thompson, and CO John Does used excessive physical force on Plaintiff; instigated prisoner(s) to assault and batter Plaintiff; violated Plaintiff's civil and constitutional rights while acting under color of state law; failed to protect Plaintiff from known harm; failed to provide Plaintiff with reasonable accommodations for his disability; drafted and filed, or conspired to file, knowingly false disciplinary reports, incident reports, and medical reports regarding the subject incident; ignored, refused, denied, and/or delayed Plaintiff's requests for medical attention for the injuries alleged herein; gave knowingly false statements; and took specific and definitive measures to cover up evidence of their unlawful activities.

## STATEMENT OF FACTS

A. May 5, 2013: Plaintiff punched by PO Brown at Central Booking, NYPD Delays Access to Medical Treatment, and NYPD Cover-Up

58.     On or about May 4, 2013, Plaintiff, TYSON POULOS, was arrested by officers of the NYPD, taken to the 90th Precinct for processing, and then transferred to Kings County Central Booking ("Central Booking"), where he remained confined to the custody, care and control of said defendants while awaiting arraignment.

59.     While confined to the custody, care and control of the NYPD at Central Booking, Plaintiff repeatedly requested medical attention from Defendant PO Brown as well as unknown NYPD personnel as he was experiencing anxiety resulting in a panic attack due to agoraphobia, as well as withdrawal symptoms.

60.     Each of Plaintiff's requests for medical attention was refused.

61.     On at least one such occasion, PO Brown laughed at Plaintiff, called him a "junkie", and mocked him for requesting medical attention so often.

62.     Plaintiff also requested to use a restroom outside of a holding cell because his agoraphobia was preventing him from urinating in an open cell containing approximately sixty detainees.  This request was also met with ridicule by PO Brown.

63.     In the evening hours of May 5, 2013, while still awaiting arraignment, Plaintiff continued to request medical attention and use of a restroom outside the holding cell.  During the last request, PO Brown opened the cell door, reached into his pocket to grasp an unknown object, and then, with said object wrapped inside his hand so as to make a more effective fist, did punch Plaintiff in his head, causing Plaintiff to lose consciousness and suffer physical injuries.

64.     PO Brown punched Plaintiff in the head in order to punish, discipline, assault and/or retaliate against Plaintiff.

65.     Immediately prior to PO Brown punching Plaintiff in the head, Plaintiff was not a threat, immediate or otherwise, to PO Brown as he was confined within a holding cell at the time and PO Brown was outside the closed cell door.

66.     No reasonable police officer would have perceived Plaintiff's conduct to be aggressive or confrontational such that would require or warrant an officer to intentionally strike Plaintiff.

67.     At no time prior to entering the holding cell and punching Plaintiff in the head did PO Brown or any other NYPD officer attempt to defuse any perceived situation by issuing a verbal command or warning to Plaintiff, by seeking intervention by mental health staff, by using non-contact control techniques such as chemical agents or an electronic immobilization shield, or by applying control holds.

68.     Instead, PO Brown purposely entered the holding cell with the intent to punch and harm Plaintiff.

69.     PO Brown could have avoided punching Plaintiff in the head but neglected or refused to do so.

70.     PO Brown purposely placed an object within his fist prior to punching Plaintiff so as to cause maximum damage and injury to Plaintiff from the blow.

71.     PO Brown used unlawful and excessive physical force upon Plaintiff.

72.     PO Brown subjected Plaintiff to cruel, unusual, inhumane and degrading treatment.

73.     PO Brown subjected Plaintiff to unnecessary and wanton infliction of pain.

74.     PO Brown's conduct was grossly disproportionate to the circumstances then and there existing.

75.     PO Brown did not need to use physical force and/or inflict blows upon Plaintiff as Plaintiff was not physically threatening to PO Brown.

76.     PO Brown did not need to use physical force and/or inflict blows upon Plaintiff in self-defense, in order to maintain order, in order to enforce observation of discipline, or in order to secure or control Plaintiff or the holding cell.

77.     At no point during the time period mentioned herein did Plaintiff neglect or refuse a lawful order of a police officer or rule or regulation of NYPD, nor did he resist or disobey any lawful command of a police officer, nor did he offer violence to any officer or other detainee, nor did he injure or attempt to injure NYPD property, nor did her attempt to escape, nor did he attempt to lead or take part in a revolt or insurrection.

78.     Following the subject incident, the NYPD, its agents, servants and/or employees, including but not limited to Defendant PO Brown, refused and/or delayed Plaintiff's access to reasonable and appropriate medical care for approximately three (3) hours.

79.     To that end, when FDNY paramedics eventually arrived at the scene, PO Brown and/or PO Ortiz did obstruct their efforts to provide Plaintiff with medical care and transport him to a hospital in an attempt to cause further harm and pain and suffering to Plaintiff.  PO Brown specifically informed said paramedics that they were not permitted to remove Plaintiff from Kings Central Booking.

80.     As a result of PO Brown punching Plaintiff in the head, Plaintiff was caused to lose consciousness and suffer physical injuries, including but not limited to an open wound approximately 3 inches long and 2 centimeters deep above Plaintiff's right eyebrow.

81.     As described herein, Plaintiff suffered physical injuries of an objectively serious and important nature; however, the NYPD, its agents, servants and/or employees, including but

not limited to Defendant PO Brown, delayed and/or failed to authorize, make arrangements and provide transportation for, or provide timely and adequate medical care and treatment to Plaintiff.

82.     Plaintiff's medical condition was of such gravity that it can be considered a serious medical condition.  Defendants, by ignoring his requests for treatment, acted with deliberate indifference.

83.     As a result of the defendants' deliberate indifference, Plaintiff experienced prolonged and significantly increased pain and suffering.

84.     Following the subject incident, the NYPD, its agents, servants and/or employees, including but not limited to Defendants PO Brown and PO Ortiz, acting individually and/or in concert and conspiracy with each other, and in an attempt to cover-up and/or conceal PO Brown's unlawful conduct and/or in retaliation for Plaintiff exercising his First Amendment rights and speaking truthfully about said incident with the NYPD's Internal Affairs Division, did draft, execute and file false official documents and gave false sworn statements, reports and/or testimony wherein they dishonestly claimed that Plaintiff caused and/or threatened to cause serious physical injury to an officer by spitting on or at PO Brown and telling him that he was HIV positive, for the purpose of and resulting in Plaintiff being cited, re-arrested, prosecuted and further imprisoned.

85.     Plaintiff did not spit at PO Brown.

86.     Plaintiff did not tell PO Brown that he is HIV positive nor is he.

B.   May 13, 2013: Plaintiff Attacked By Unknown Prisoner

87.     On or about May 7, 2013, Plaintiff was transferred from the custody and care of the NYPD to DOC custody and care.

88.     On or before May 13, 2013, Plaintiff was assigned by DOC, its agents, servants and/or employees, to and housed at AMKC, 11 Mod, on Rikers Island.

89.     On the date and place aforesaid, at approximately 7:00 p.m., Plaintiff was talking on the telephone thereat when an unknown prisoner approached him and threatened to drop hot water on Plaintiff if he did not immediately end his call and give the telephone to this unknown prisoner.

90.     It is common knowledge amongst prisoners and DOC officers and staff that the unknown prisoner is a member of the Bloods prison gang ("gang member").

91.     Upon information and belief, Defendant Correction Officers Gordon ("CO Gordon"), Jerrick ("CO Jerrick") and/or Thompson ("CO Thompson") saw and heard the gang member's threats to Plaintiff because one or more of said officers approached said gang member and ordered him to return to his bunk.

92.     As the gang member was heading, presumably, back to his bunk, CO Gordon, Jerrick and Thompson began to instigate the gang member in a manner that threatened the safety, security and well-being of Plaintiff, both immediately and in the future.  To wit, said officer(s) shouted to the gang member "White boy [Plaintiff] will fuck you up!" and other similar statements of the same tone and affect.

93.     As a direct and proximate result of said officers' instigations, provocations, and taunts, the gang member reversed his course and attacked Plaintiff, striking Plaintiff in the head approximately ten times with his fists.

94.     After said gang member punched Plaintiff approximately ten (10) times in his head, CO Gordon, Jerrick and/or Thompson intervened by administering chemical agents upon the gang member and Plaintiff, who was acting in self-defense.

95.     As a result of the foregoing attack by the gang member and subsequent application of chemical agents, Plaintiff sustained physical, emotional and psychological injuries.

96.     At no time prior to administering chemical agents did CO Gordon, Jerrick, Thompson and/or any other DOC officer or staff member attempt to verbally defuse the escalating situation between the gang member and Plaintiff.  Rather, said defendants used the opportunity to incite and further enflame the gang member to set upon Plaintiff.

97.     Said officers and/or other DOC personnel failed to timely and properly decontaminate Plaintiff, as required by law and DOC Directive.

98.     Said defendants used unlawful and excessive physical force upon Plaintiff.

99.     Said defendants subjected Plaintiff to cruel, unusual, inhumane and degrading treatment.

100.    Said defendants subjected Plaintiff to unnecessary and wanton infliction of pain.

101.    Said defendants' conduct, as it relates to Plaintiff, was grossly disproportionate to the circumstances then and there existing.

C.  July 5 and 6, 2013: Plaintiff Attacked By Defendant McFadden

102.    On or before July 5, 2013, Plaintiff was assigned by DOC, its agents, servants and/or employees, to and housed at AMKC, 1 Main, on Rikers Island.

103.    On or before July 5, 2013, Defendant Christopher McFadden ("McFadden") was assigned by DOC, its agents, servants and/or employees, to and housed at AMKC, 1 Main, on Rikers Island.

104.    On at least two (2) occasions prior to July 5, 2013, McFadden was involved in violent altercations with other prisoners and/or DOC officers and staff.  DOC, its agents, servants

and employees, had notice of same.

105.    On or about July 5, 2013, McFadden approached Plaintiff while he was speaking on the telephone and, in an unprovoked attack, punched Plaintiff several times in the face. Unlike the May 13, 2013 incident aforesaid, DOC officers and/or staff arrived on the scene quickly and pulled McFadden off of Plaintiff.  Plaintiff did not suffer significant physical injuries as a result of this attack.

106.    Following said incident, Plaintiff and McFadden were removed from 1 Main and taken to the Booking Office.  While confined to separate cells at the Booking Office, McFadden threw food at Plaintiff through the cell bars and verbally threatened him.  As a result, a DOC supervisor instructed an officer or staff member thereat to reassign Plaintiff and McFadden to separate housing areas as McFadden was likely to start another fight with Plaintiff should he ever see him again.

107.    On July 5, 2013, at approximately 9:00 p.m., DOC, its agents, servants and/or employees, reassigned Plaintiff to Dorm 18 West Upper; McFadden was relocated to a different, unknown housing area.

108.    The following morning, approximately twelve (12) hours after a DOC supervisor ordered that Plaintiff and McFadden be housed apart from each other for safety and security reasons, DOC officers inexplicably modified McFadden's housing assignment and relocated him to Dorm 18 West Upper – Plaintiff's assigned housing area.

109.    Upon McFadden entering Dorm 18 West Upper, he approached Plaintiff as he lay asleep in his bed and began to punch Plaintiff in the head and face numerous times, causing Plaintiff to suffer significant physical injuries, including but not limited to three (3) fractures to his jaw, as well as psychological and emotional injuries.

110.    As a result of the foregoing incident, Plaintiff suffered physical injuries of an objectively serious and important nature; however, DOC officers delayed and/or failed to authorize, make arrangements and provide transportation for, or provide timely and adequate medical care and treatment to Plaintiff for nearly twelve hours.

111.    Plaintiff's medical condition was of such gravity that it can be considered a serious medical condition.  Defendants, by ignoring Plaintiff's requests for treatment, acted with deliberate indifference.

112.    As a result of the defendants' deliberate indifference, Plaintiff experienced prolonged and significantly increased pain and suffering.

113.    Eventually, Plaintiff was removed to Bellevue Hospital Center ("Bellevue"), where he underwent open reduction internal fixation, implantation of plates and screws, and was admitted to said hospital for over one (1) week.

114.    Upon Plaintiff's return to DOC custody from Bellevue, on or about July 13, 2013, DOC, its agents, servants and/or employees, assigned Plaintiff to housing area 16 Upper at AMKC, which was the same housing area assigned to inmate McFadden, who had assaulted him twice before.  As a result, Plaintiff was caused to immediately fear for his life and safety until such time that DOC transferred Plaintiff to a different housing area later that day.

115.    While at Bellevue, Plaintiff was provided pain medication and a puree diet. Despite medical orders directing that Plaintiff continue with pain medications and a puree diet upon his return to DOC custody, DOC discontinued and denied Plaintiff pain medications, follow-up medical care, and a puree diet, causing Plaintiff to suffer extreme pain and discomfort.

116.    Plaintiff's aforesaid injuries significantly affect his daily activities, including but not limited to his ability to breathe, speak, run, eat, drink and chew.

117.    The failure of the defendants to provide due and timely medical care and treatment to the plaintiff caused further and substantial harm to the plaintiff, including but not limited to increased and prolonged pain, and psychological and emotional injuries.

### FIRST CLAIM FOR RELIEF:
### VIOLATIONS OF PLAINTIFF'S CIVIL RIGHTS BY POLICE OFFICER JAMEL BROWN, AND POLICE OFFICER JUANA ORTIZ
_____

118.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "117", inclusive, of this Amended Complaint, as if same were fully set forth herein.

119.    As set forth above, Defendants, Police Officer Jamel Brown and Police Officer Juana Ortiz, acting under the color of law, did intimidate, assault, batter and use excessive physical force on Plaintiff; did use force on Plaintiff as punishment; did retaliate against Plaintiff for exercising his First Amendment rights; did ignore, refuse, deny and/or delay Plaintiff's access to timely and reasonable medical care; did fail to follow medical orders; did knowingly draft and/or file false reports, incident reports, criminal complaints and/or medical reports in an effort to cover-up evidence of their unlawful activities; and were deliberately indifferent to Plaintiff's medical needs, all without legal cause or justification and with purposeful intent to cause harm to Plaintiff.

120.    As set forth above, said defendants failed to notify City or federal authorities as to what they had seen and/or heard, as required by law.

121.    As set forth above, said defendants failed to take appropriate action to investigate and report the subject incident, as required by law.

122.    As set forth above, the subject incident, as well as the defendant officers' ignoring, acquiescence, joining and/or complicity in same, constituted an unnecessary, unreasonable, and excessive use of force.

123.    Said defendants acted with deliberate indifference to the plaintiff's safety, security, health and immediate medical needs.

124.    As a direct and proximate result of the defendants' deliberate indifference to Plaintiff's objectively serious medical condition, the plaintiff's resulting physical, psychological and emotional injuries, pain and suffering were significantly exacerbated and his recovery compromised.

125.    As set forth above, these defendants have made every effort to conceal the truth about what actually occurred, including but not limited to covering up, or attempting to cover up, the illegal conduct complained of herein.

126.    The aforesaid acts and omissions violated the plaintiff's clearly established civil rights secured by the United States Constitution and were the direct and proximate cause of the physical, psychological, and emotional injuries he suffered.

127.    The actions of the defendant officers were malicious in the instance.

128.    As set forth above, the City and NYPD have had, and continue to have, a custom and practice of deliberate delay and avoidance in investigating allegations of abuse and other misconduct by their officers, to the detriment of the plaintiff.

129.    The defendant officers, by reasonable diligence, could have prevented the aforesaid wrongful acts from being committed.

130.    The defendant officers, by reasonable diligence, could have mitigated the plaintiff's injuries had they intervened in the aforesaid unlawful conduct and/or protected Plaintiff.

131.    As set forth above, said defendants were deliberately indifferent to Plaintiff's medical condition by their failure to provide access to timely and appropriate medical care and

carry out medical orders; their conduct was so grossly incompetent, inadequate, and excessive as to shock the conscience, and were so intolerable to fundamental fairness; and maliciously and sadistically used force to cause harm.

132.    As a result of the foregoing, Plaintiff was caused to be subjected to the deprivations of rights, privileges and/or immunities secured by the Constitution and statutes of the United States of America and has been damaged thereby.

133.    As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

**SECOND CLAIM FOR RELIEF:**
**42 U.S.C. §§1985 AND 1986 CONSPIRACY BY**
**POLICE OFFICER JAMEL BROWN, AND POLICE OFFICER JUANA ORTIZ**
_____

134.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "133", inclusive, of this Amended Complaint, as if same were fully set forth herein.

135.    PO Brown, PO Ortiz and NYPD supervisors, acting under the color of law, willfully conspired with one another to deprive the plaintiff of his constitutional rights, including but not limited to his right: to be free from cruel and unusual punishment; to be free from the use of unreasonable and/or excessive force; to be free from false arrest and imprisonment; to be free from unreasonable delay and/or denial of medical attention; to be free from harassment and intimidation; to be free from retaliation for exercising his First Amendment rights; to equal protection of the law; to equal privileges and immunities under the law; to associate and speak freely; and to have access to and seek redress in the courts.

136.    It was part of said conspiracy that said defendants did deny and/or delay due and necessary medical care and treatment to the plaintiff; did fail to protect the plaintiff from known and/or avoidable harm while he was in their custody; did file false criminal charges against

Plaintiff; did deliberately suppressing the truth; and did submit false reports, statements and/or testimony to support and corroborate the fabricated allegations lodged against the plaintiff, for their own benefit.

137.    As a result of said conspiracy and/or said defendants' furtherance of the conspiracy, Plaintiff has been injured and deprived of the rights and privileges afforded by the Constitution and statutes of the United States of America.

138.    Said defendants had knowledge that a 42 U.S.C. §1985(3) conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing, and neglected or refused to do so.

139.    With due diligence, NYPD officers and supervisors could have promptly reported the subject events to superiors and to duly authorized investigators. Their failure to do so allowed the conspiracy to continue and the truth be suppressed.

140.    Had said defendants complied with the law and furnished truthful information to authorities about their conduct and/or Plaintiff's conduct, the §1985(3) conspiracy would not have succeeded to the extent that it has.

141.    As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

### THIRD CLAIM FOR RELIEF:
### VIOLATIONS OF PLAINTIFF'S CIVIL RIGHTS BY
### CORRECTION OFFICER GORDON, CORRECTION OFFICER JERRICK,
### CORRECTION OFFICER THOMPSON, AND CORRECTION OFFICERS JOHN DOE
_____

142.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "141", inclusive, of this Amended Complaint, as if same were fully set forth herein.

143.    As set forth above, Defendants, Correction Officer Gordon, Correction Officer Jerrick, Correction Officer Thompson, and Correction Officers John Doe, acting under the color of law, did cause Plaintiff to be intimidated, assaulted and battered by prisoners; did use excessive physical force on Plaintiff; did cause Plaintiff to be assaulted and battered out of deliberate indifference and/or disinterested malevolence; did ignore, refuse, deny and/or delay Plaintiff's access to timely and reasonable medical care; did fail to follow medical orders; did knowingly draft and/or file false reports, incident reports, and/or disciplinary infractions in an effort to cover-up evidence of their unlawful activities; did fail to protect Plaintiff from known and foreseeable harm; and were deliberately indifferent to Plaintiff's needs, all without legal cause or justification and with purposeful intent to cause harm to Plaintiff.

144.    As set forth above, DOC supervisors and officers failed to notify City or federal authorities as to what they had seen and/or heard, as required by law.

145.    As set forth above, DOC supervisory personnel failed to take appropriate action to investigate and report the subject incident, as required by law.

146.    As set forth above, the subject incident, as well as the defendant officers' ignoring, acquiescence, joining and/or complicity in same, constituted an unnecessary, unreasonable, and excessive use of force.

147.    The defendants acted with deliberate indifference to the plaintiff's safety, security, health and immediate medical needs.

148.    As a direct and proximate result of the defendants' deliberate indifference to Plaintiff's objectively serious medical condition, the plaintiff's resulting physical, psychological and emotional injuries, pain and suffering were significantly exacerbated.

149.     As set forth above, the defendants have made every effort to conceal the truth about what actually occurred, including but not limited to covering up, or attempting to cover up, the illegal conduct complained of herein.

150.     The aforesaid acts and omissions violated the plaintiff's clearly established civil rights secured by the United States Constitution and were the direct and proximate cause of the physical, psychological, and emotional injuries he suffered.

151.     The actions of the defendant officers were malicious in the instance.

152.     As set forth above, the City and DOC have had, and continue to have, a custom and practice of deliberate delay and avoidance in investigating allegations of abuse and other misconduct by their officers, to the detriment of the plaintiff.

153.     The defendant officers, by reasonable diligence, could have prevented the aforesaid wrongful acts from being committed.

154.     The defendant officers, by reasonable diligence, could have mitigated the plaintiff's injuries had they intervened in the aforesaid unlawful conduct and/or protected Plaintiff.

155.     As set forth above, said defendants were deliberately indifferent to Plaintiff's medical condition by their failure to provide access to timely and appropriate medical care and carry out medical orders (e.g., failed to timely and properly decontaminate Plaintiff); failed to take steps to prevent the plaintiff's condition from degenerating (e.g., failure to arrange and transport Plaintiff to medical appointments and follow-up care); their conduct was so grossly incompetent, inadequate, and excessive as to shock the conscience, and were so intolerable to fundamental fairness; and maliciously and sadistically used force to cause harm.

156.    As a result of the foregoing, Plaintiff was subjected to the deprivation of rights, privileges and/or immunities secured by the Constitution and statutes of the United States of America and has been damaged thereby.

157.    As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

### FOURTH CLAIM FOR RELIEF:
### VIOLATIONS OF PLAINTIFF'S CIVIL RIGHTS BY
### CORRECTION OFFICERS JOHN DOE

158.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "157", inclusive, of this Amended Complaint, as if same were fully set forth herein.

159.    As set forth above, Defendants Correction Officers John Doe, acting under the color of law, were deliberately indifferent to Plaintiff's security, safety and physical well-being in that their conduct resulted in Plaintiff being assaulted and battered by Defendant prisoner McFadden; did fail to follow procedures and directives including but not limited to inmate classification, housing disciplinary procedures, and prisoner-on-prisoner violence; did fail to protect Plaintiff from known and foreseeable harm; did fail to segregate Plaintiff from known danger; did ignore, refuse, deny and/or delay Plaintiff's access to timely and reasonable medical care following said incident; did fail to follow medical orders; did knowingly draft and/or file false reports, incident reports, and/or disciplinary infractions in an effort to cover-up evidence of their unlawful activities; did fail to protect Plaintiff from the known and foreseeable harm posed by Defendant McFadden; and were otherwise deliberately indifferent to Plaintiff's needs.

160.    As set forth above, DOC supervisory personnel failed to take appropriate action to investigate and report the subject incident.

161.    The defendants acted with deliberate indifference to the plaintiff's safety, security, health and immediate medical needs.

162.    The aforesaid acts and omissions violated the plaintiff's clearly established civil rights secured by the United States Constitution and were the direct and proximate cause of the physical, psychological, and emotional injuries he suffered.

163.    The actions of the defendant officers were malicious in the instance.

164.    The defendant officers, by reasonable diligence, could have prevented the aforesaid wrongful acts from being committed.

165.    The defendant officers, by reasonable diligence, could have mitigated the plaintiff's injuries had they intervened in the aforesaid unlawful conduct and/or protected Plaintiff.

166.    The defendant officers violated Plaintiff's Constitutionally-protected rights by:

   a.    Causing, allowing and/or permitting Plaintiff to be assaulted and battered while in their custody and care;

   b.    Failing to render timely and due medical care and treatment to Plaintiff;

   c.    Failing to provide Plaintiff with access to timely and due medical care and treatment;

   d.    Engaging in a cover-up in order to conceal the wrongful and unlawful conduct taken against the plaintiff;

   e.    Failing to protect Plaintiff; and

   f.    By subjecting Plaintiff to cruel and unusual punishment.

167.    As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

**FIFTH CLAIM FOR RELIEF:**
**MUNICIPAL LIABILITY**
_____

168.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "167", inclusive, of this Amended Complaint, as if same were fully set forth herein.

169.    The defendant officers, collectively and individually, while acting under color of state and local law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the City, NYPD and/or DOC but which is forbidden by the Constitution of the United States.

170.    That prior to May 5, 2013, the City, through the NYPD and DOC, developed and maintained customs, policies, usages, practices, procedures and rules that: (a) ignore the civil and statutory rights of persons in their custody and control; (b) deprive persons in their custody and control their constitutional and statutory rights; (c) permit the use of force in an unreasonable, unnecessary, unjustified and excessive manner; (d) fail to adequately instruct and supervise the officers under said defendants' control in the proper and appropriate care and treatment of prisoners in their custody and control; (e) fail to adequately instruct and supervise the officers under said defendants' control in communicating with, understanding and gaining compliance from mentally ill prisoners; (f) inadequately provide for the investigation of complaints of harassment, intimidation, misconduct, excessive use of force, officer abuse, discrimination, denial and/or delay of medical care, refusals to provide reasonable accommodations, and other misconduct by officers and supervisors, and inadequately punishing the subjects of those complaints which were substantiated; (g) tolerate acts of brutality; (h) operate to insulate officers who engage in criminal or other serious official misconduct from detection, prosecution, and punishment, and are maintained with deliberate indifference; (i) tolerate officers and supervisors

who engage in a pattern and practice of actively and passively covering up misconduct by fellow officers, thereby establishing and perpetuating a "code of silence", which has become so ingrained in the defendants so as to constitute a policy of the City, NYPD and DOC; (j) discriminate against disabled prisoners; and (k) have a lack of understanding and respect for mentally ill prisoners, their conditions and needs.

171.    That the aforementioned customs, policies, usages, practices, procedures and rules of the City and DOC resulted in re-assigning Plaintiff and McFadden to the same housing area shortly after a violent altercation occurred between them, thereby creating an opportunity for McFadden to attack Plaintiff again and cause more significant injuries.

172.    The NYPD and DOC not only condone officer-on-prisoner and prisoner-on-prisoner violence, but the entrenched cultures of these departments promote, facilitate, and encourage it.  Indeed, NYPD and DOC officers cruelly use violence as a management tool.

173.    The City's long-standing failure and/or refusal to supervise the police and corrections officers under its control, including supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein.  It is this policy or custom of abuse and cover-up that has caused the deprivation of the plaintiff's rights.

174.    Said policy or custom is further evidenced by frequent and significant findings of misconduct over a period of years by commissioners, command personnel, supervisors, and the officers they supervise.

175.    The failures and refusals by the City to hold these supervisors and officers accountable is a proximate cause of the injuries sustained by the plaintiff, and undoubtedly hundreds of other persons.

176.    Through promotions and other financial and status incentives, the City has the power to reward officers who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not.  The City's actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of officer harassment and intimidation, excessive use of force, discriminatory conduct, cover-up, medical neglect, or other misconduct, and fails to investigate these incidents, will suffer no damage to his or her career or financial penalty.

177.    The pattern of unchecked abuse by officers and supervisory staff, the extent to which these unlawful practices have been adopted by significant numbers of the staff, and the persistent failure or refusal of the City to supervise these persons properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the misconduct claimed by the plaintiff

178.    The foregoing customs, policies, usages, practices, procedures and rules of the City constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

179.    The foregoing customs, policies, usages, practices, procedures and rules of the City were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

180.    Prior to and at the time of the subject dates of incident, there existed a pattern and practice of harassment, intimidation, excessive use of physical force, discrimination, cover-up and conspiracy to cover-up unlawful conduct, refusals and/or failures to provide medical care or make medical care timely available, failures to conduct unbiased and thorough investigations of

same and to discipline staff meaningfully and promptly for misconduct, and the long-standing failure or refusal to supervise officers, including supervisory staff, are now so institutionalized as to constitute a policy or custom of tolerating and authorizing the wrongs alleged herein.  It is this policy or custom of abuse and cover-up that has caused the deprivation of Plaintiff's constitutional rights.

181.    The City has failed or refused to hold accountable high-ranking supervisors (i.e., sergeants, lieutenants, captains, deputy wardens, wardens, assistant deputy commissioners, deputy commissioners, and commissioners) in the face of frequent and significant misconduct, over a period of years, by these supervisors and by the officers they supervise.  This failure has subjected Plaintiff and other members of the public to the constitutional and statutory violations alleged herein.

182.    The supervisory staff within the NYPD and DOC, as well as the command structure of both, knew that the pattern of indifference to officer-on-prisoner and prisoner-on-prisoner violence, officer harassment, intimidation, physical abuse, cover-up, and delay and denial of medical care, as described above, existed and still exists within the NYPD and DOC. The failure of the City and its supervisory officials to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of their officers. The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action despite the fact that the foregoing has been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of all individuals in their custody, and Plaintiff in particular.

183.    NYPD and DOC each operate under a system-wide policy.  With some exceptions, the NYPD and DOC train all of their officers at their respective Training Academy

according to a uniform curriculum; maintain a centralized Investigation Division to investigate allegations such as those contained herein under uniform procedures; and maintain a centralized unit to conduct administrative prosecutions (or to decline to prosecute, or to plea-bargain) in those few instances where the NYPD and DOC substantiate the allegation(s). Because the Commissioners and senior officers are aware of and tolerate certain practices by their officers, including those that are inconsistent with formal policy, these practices have become widespread, longstanding, and deeply imbedded in the NYPD and DOC culture and constitute unwritten policies and customs.

184.    Commissioner Ponte has acknowledged DOC's failures to properly train its officers and monitor interaction between officers and inmates.

185.    Moreover, a August 4, 2014 report issued by the United States Attorney for the Southern District of New York, detailing a U.S. Department of Justice ("DOJ") investigation into the treatment of adolescent male inmates at Rikers Island (e.g., excessive uses of force by correction officers and supervisors, protection from inmate-on-inmate violence, and punitive segregation), concluded that there is a pattern and practice of "rampant use of unnecessary and excessive force by DOC staff…[inadequate protection] from harm caused by violence inflicted by other inmates…a deep-seated culture of violence…DOC staff routinely utilize force not as a last resort, but instead as a means to control the adolescent population and punish disorderly or disrespectful behavior."   Said report also detailed a "powerful code of silence" that "prevents staff who witness force from reporting [it]."   While the DOJ investigation focused on adolescent violence, the "investigation suggests that the systemic deficiencies identified in th[e] report may exist in equal measure at the [adult] jails on Rikers."

186.    Likewise, Commissioner Bratton has acknowledged the NYPD's failure to

properly train its officers and monitor interaction between officers and the public. Recently, an investigative report released by the New York City Department of Investigation, Office of the Inspector General for the NYPD, dated October 1, 2015, entitled *Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices* ("OIG-NYPD Report"), reached the following conclusions regarding the NYPD's use-of-force policies, practices, training, and discipline:

- NYPD's current use-of-force policy is vague and imprecise, providing little guidance to individual officers on what actions constitute force. NYPD's current use-of-force Patrol Guide procedure, which is barely more than a page of text, is completely silent on what actions constitute "force." The Patrol Guide likewise prohibits "excessive force" while offering no clarity on what constitutes "excessive force."

- NYPD's current procedures for documenting and reporting force incidents are fragmented across numerous forms, and officers frequently use generic language that fails to capture the specifics of an encounter. The lack of a centralized, uniform use-of-force reporting mechanism leaves...NYPD without adequate data regarding police officer use of force. It is currently impossible to accurately and comprehensively track the use of force by NYPD officers.

- NYPD's Patrol Guide does not properly instruct officers to de-escalate encounters with the public.

- NYPD training does not adequately focus on de-escalation. There is little to no substantive focus on de-escalation in NYPD's training programs.

- In the period reviewed, NYPD frequently failed to impose discipline even when provided with evidence of excessive force. NYPD imposed no discipline with respect to 37 of 104, or 35.6%, of substantiated allegations in which OIG-NYPD's independent review confirmed that officers used excessive force that was not warranted under the circumstances. For those cases decided in the four years between 2010 and 2013, NYPD declined to impose discipline in 34 of 77 allegations, or 44.1% of the time.

- NYPD and CCRB continue to disagree on how officers should be

held accountable for use of excessive force... Across 92 substantiated use-of-force allegations, NYPD departed downward from CCRB's disciplinary recommendations – or imposed no disciplinary action whatsoever – 67.4% of the time.

- NYPD should publish an annual report addressing the use of force by officers…Such a report would promote greater transparency and accountability while allowing NYPD to consolidate and learn from data on use of force.

187.    The supervisory staff of the NYPD and DOC has consistently failed to investigate allegations such as those contained herein and to discipline officers who violate NYPD and DOC guidelines. The investigation of these incidents by central office and/or supervisory staff reflects a bias in favor of uniformed officers. Furthermore, officers and staff who are known to have violated an individual's civil rights in one command are often transferred by NYPD and DOC to another command rather than be disciplined, demoted or fired.

188.    Upon information and belief, the pattern of misconduct alleged herein has been condoned by the Commissioners and ranking commanders and supervisors of the NYPD and DOC, who have been or are aware of the number, frequency, and severity of these incidents and of the continuing risk of physical injury at the hands of uniformed officers.  The Commissioners, precinct commanders, captain and deputies, facility wardens and deputies, and supervisors receive and/or received a daily compilation of reports from NYPD and DOC commands documenting violent incidents, including an officer's use of force and prisoner violence.  These reports, which are circulated throughout the NYPD and DOC, contain brief summaries of the incident.  These summaries have documented, and continue to document, routine uses of force by officers under circumstances which very often suggest that the officers' accounts are fabricated to cover up brutality and other misconduct.  These reports routinely document injustices the same or similar to the allegations contained herein, and consistently find no basis to

question the officer's conduct, even when an officer's report describes conduct which is proscribed by NYPD and DOC written policy or fails to account for the prisoner's injuries.

189.    With rare exception, officers whose misconduct is brought to the attention of supervisory personnel continue to work without any substantial disciplinary action being taken against them.

190.    Although the NYPD and DOC have computerized systems capable of identifying officers involved in multiple unlawful incidents and/or cover-ups, this information has not been utilized by NYPD and DOC Commissioners, commanders or supervisors to reduce the severity or incidence of these events.  The fact that these abuses by officers remain unchecked and unrestrained leads the staff to believe that they may act with impunity.

191.    Similarly, NYPD and DOC officials and supervisory staff have consistently failed to investigate grievances, prisoner complaints, and complaints made to each department's Internal Affairs Bureau, Civilian Complaint Review Board and Board of Corrections of officer abuse, harassment, intimidation and disrespect; excessive uses of force; cover-ups; denial and/or delay of medical treatment or other inattention; discrimination due to physical or mental disability; violations of NYPD and DOC directives and guidelines and other misconduct; and have failed to discipline the subjects of those grievances and complaints which were substantiated.

192.    As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

**SIXTH CLAIM FOR RELIEF:**
**VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**
**AND REHABILITATION ACT**
_____

193.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs

"1" through "192", inclusive, of this Amended Complaint, as if same were fully set forth herein.

194.   At all times herein mentioned, as a result of the July 6, 2013 incident, Plaintiff suffered a fractured jaw, requiring open reduction internal fixation to implant plates and screws.

195.   Following the July 6, 2013 incident, Plaintiff suffered from a "disability", as that term is defined by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(1), which prevented him from performing "major life activities", as that term is defined by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(2).

196.   Following the July 6, 2013 incident, the plaintiff was a "qualified individual with a disability", as that term is defined by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131(2).

197.   At all times herein mentioned, the City is "public entity", as that term is defined by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131(1)(a) and (b).

198.   The City and CO John Does repeatedly discriminated against the plaintiff due to his disability, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

199.   Said defendants discriminated against the plaintiff with respect to the acts and omissions associated with their custody, care and control of the plaintiff, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

200.   Said defendants discriminated against the plaintiff by failing to provide the plaintiff with reasonable and adequate accommodations; by failing to provide Plaintiff with a puree diet, although directed to by physicians; by failing to provide adequate medical care and treatment to Plaintiff; by being deliberately indifferent to Plaintiff's physical and medical needs;

by harassing the plaintiff about his disability; by harassing the plaintiff due to his disability; and in other acts and omissions discriminating against the plaintiff, all in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

201.    By reason of the foregoing discriminatory acts and omissions of said defendants, and the failure of said defendants to cure same, Plaintiff was caused to experience physical, psychological and emotional pain and suffering, and in other respects was damaged.

## PENDANT STATE CLAIMS

### CONDITIONS PRECEDENT

202.    On or about July 18 and 19, 2013, Plaintiff caused four (4) Notice of Claims to be electronically filed with the Comptroller of the City of New York, setting forth the time, place, and substance of the claims alleged herein, as well as a description of injuries sustained by the plaintiff.

203.    On or about October 24, 2013, the City of New York conducted a hearing of Plaintiff pursuant to Section 50-h of the General Municipal Law.

204.    More than thirty (30) days have elapsed since the filing of the Notices of Claim and the defendants have neglected and/or refused to make an adjustment thereof.

205.    This action was commenced, including all applicable tolls, within a year and ninety days after said causes of action arose.

206.    This action falls within one or more of the exceptions set forth in CPLR §1602.

## FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
## HARASSMENT, INTIMIDATION, ASSAULT AND BATTERY
_____

207.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "206", inclusive, of this Amended Complaint, as if same were fully set forth herein.

208.    As set forth above, Plaintiff was harassed, intimidated, assaulted, and battered by Defendant PO Brown.

209.    As set forth above, Plaintiff was harassed, intimidated, assaulted, and battered by an unknown prisoner at the encouragement and/or behest of Defendants CO Gordon, CO Jerrick and CO Thompson.

210.    As set forth above, Plaintiff was harassed, intimidated, assaulted, and battered by Defendant McFadden.

211.    The aforesaid uses of intimidation and physical force against Plaintiff were excessive, unnecessary, unprovoked and unlawful.

212.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, a violation of his civil and due process rights, and pecuniary loss.

**SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: CONSPIRACY**
_____

213.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "212", inclusive, of this Amended Complaint, as if same were fully set forth herein.

214.    As set forth above, the defendant officers and supervisory staff conspired with and amongst one another to harass, intimidate, assault and batter Plaintiff; to bring false criminal and/or disciplinary actions against Plaintiff; to deny and/or delay medical treatment to Plaintiff; to discriminate against Plaintiff based upon his disability; to cover up their unlawful conduct; and/or to otherwise deprive the plaintiff of his Constitutional, statutory and common law rights.

215.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, as well as pecuniary loss.

**THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**NEGLIGENCE**
_____

216.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "215", inclusive, of this Amended Complaint, as if same were fully set forth herein.

217.    Said defendants, their agents, servants and employees, including but not limited to the defendants named herein, were negligent in the instance in their ownership, operation, supervision, enforcement, maintenance, inspection and control of Kings Central Booking and the various housing and medical treatment areas of AMKC; in assigning Plaintiff and McFadden to the same housing area after they had been involved in a physical altercation and verbal threats of future violence were made by McFadden against Plaintiff; in failing to reasonably and adequately supervise and control their officers; in failing to protect the health and welfare of the plaintiff; in failing to provide the plaintiff with reasonably safe living conditions while he was confined to their custody and control; in failing to quickly and diligently intercede on behalf of Plaintiff; in setting a trap for the plaintiff; in failing to take cognizance of a dangerous and escalating situation; in failing to have an adequate policy to curtail officer-on-prisoner and prisoner-on-prisoner violence; in failing to take reasonable measures and precautions to avoid and/or mitigate the incidence of officer-on-prisoner and prisoner-on-prisoner violence; in violating the plaintiff's civil, statutory and common law rights; in infringing upon the freedoms afforded to the plaintiff; in being deliberately indifferent to the plaintiff's health, safety, and security; in causing and allowing Kings Central Booking and AMKC to be and remain a violent and dangerous jail for those imprisoned therein; in causing, creating and/or allowing unlawful jail conditions to be and remain; in failing to have a policy that adequately addresses officer interaction with mentally ill prisoners and/or arrestees; in having a policy, either written or by

custom, which accepts and/or promotes officer-on-prisoner and prisoner-on-prisoner violence; in having a policy, either written or by custom, which accepts and/or promotes officer disinterest, indifference, apathy and/or uninvolvement during incidents of officer-on-prisoner and prisoner-on-prisoner violence; in failing to timely prevent and/or mitigate the subject incidents despite having notice, time and opportunity to do so; in failing to reasonably and adequately discipline officers following violent incidents; in failing to give the plaintiff notice and/or warning; in causing and/or allowing the plaintiff to be injured; in causing and creating a dangerous condition conducive to causing injury; in causing and creating a dangerous and hazardous condition to exist; in creating and allowing a nuisance to exist; in failing to provide for the safety of the plaintiff; in failing to adequately train their officers; in failing to have trained personnel; that the above stated occurrence would not have occurred but for the negligence, in whole or in part, of the City, their officers, supervisors, deputies, commissioners, and other officials in their employ; in failing to protect the plaintiff in each and every instance set forth above; in causing, permitting and/or allowing the plaintiff to be assaulted, battered, threatened and menaced; in denying and/or delaying the plaintiff's access to timely, due and adequate medical care for the injuries he suffered during the subject incidents; in failing to fully, faithfully and reasonably provide the plaintiff was necessary medical care; and said defendants were otherwise negligent, careless and reckless in the instance.

218.    Inasmuch as the officers, supervisors, staff and other officials were acting for, upon, and in furtherance of the business of the City of New York and within the scope of their employment, the City of New York is liable under the doctrine of *respondeat superior* for the tortious actions of said persons.

219.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

### FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: VIOLATION OF NEW YORK CONSTITUTION AND STATUTES

220.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "219", inclusive, of this Amended Complaint, as if same were fully set forth herein.

221.    As set forth above, Plaintiff was deprived by defendants of his rights to free speech, to be free from gratuitous and excessive force and punishment, to be free from cruel and unusual punishment, to be free from discrimination due to disability, and to due process of law, as guaranteed to him by the Constitution and statutes of the City and State of New York and the Charter of the City of New York.

222.    The aforesaid violations, and the failure of the City, its supervisory personnel and Commissioners, to take appropriate steps to curb the widespread pattern of same or similar conduct by their officers and staff, violated Plaintiff's rights under the New York State Constitution to due process of law, to free speech, and to be free from degrading treatment and physical abuse.

223.    By their refusal to provide prompt medical attention and a puree diet to plaintiff after he was injured, the defendants violated Plaintiff's statutory rights.

224.    The defendants conduct complained of herein violated Plaintiff's rights secured by the Constitution of the State of New York, Article 15 of the New York State Executive Law ("NYS Human Rights Law"), Section 40 *et seq.* of the New York State Civil Rights Law (the "NYS Civil Rights Law"), New York Corrections Law, and Sections 8-107 *et seq.*, 8-502 *et seq.*

and 8-603 *et seq.* of the Administrative Code of the City of New York (the "City Human Rights Law")

225.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, as well as pecuniary loss.

**FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION**
_____

226.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "225", inclusive, of this Amended Complaint, as if same were fully set forth herein.

227.    The City, its agents, servants, appointees and employees, were negligent, careless and/or reckless in the hiring, training, retention, supervision, direction, control, appointment and/or promotion of the their agents, servants and employees, including but not limited to the defendant officers, in that said employees lacked the experience and ability to be employed by the City, NYPD and/or DOC; in failing to exercise due care and caution in their hiring, appointment and promotion practices, and in particular, hiring individuals who lacked the mental capacity and ability to function as employees of said defendants; in that the defendant-employees lacked the maturity, sensibility and intelligence to be employed by said defendants; in that said defendants knew of the lack of ability, experience and maturity of the defendant-employees when they hired them; in that said defendants, their agents, servants and/or employees, failed to suspend and/or terminate the defendant-employee(s) when such action was either proper or required; and in being otherwise careless, negligent and reckless in the instance.

228.    The failure of the City, its agents, servants, appointees and employees, to adequately train their agents, servants and employees, including but not limited to the defendant officers, in the exercise of their employment functions, and their failure to enforce the laws of the

State of New York and the Charter, rules and regulations of the City of New York, is evidence of the reckless lack of cautious regard for the rights of the prisoners in their custody and Plaintiff in particular, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

229.    The City knew or should have known in the exercise of reasonable care, the propensities of their agents, servants and employees, including but not limited to the defendant officers, to engage in the wrongful conduct heretofore alleged in this Complaint.

230.    The City knew or should have known that its policies, customs and practices, as well as their negligent hiring, retention, supervision, training, appointment and promotion of their agents, servants and employees, including but not limited to the defendant officers, created an atmosphere where the most prominent offenders felt assured that their most brazen acts of abuse, misconduct and neglect would not be swiftly and effectively investigated and prosecuted.

231.    That the mistreatment and abuse of the plaintiff, as set forth above, was the reasonably foreseeable consequence of said defendants' negligent conduct.

232.    The aforesaid acts of the City, its agents, servants, appointees and employees, resulted in the plaintiff being harassed, intimidated, assaulted, battered, falsely arrested, falsely imprisoned, falsely and maliciously prosecuted, discriminated against, denied and/or delayed medical treatment, his civil rights being violated, in failing to protect Plaintiff from known, foreseeable and/or preventable harms, and in the plaintiff being caused to suffer and continue to suffer severe physical, psychological and emotional pain and suffering, and in other respects were damaged.

**SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**NEGLECT AND FAILURE TO PROVIDE MEDICAL TREATMENT**
_____

233.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "232", inclusive, of this Amended Complaint, as if same were fully set forth herein.

234.     As set forth above, the City and Commissioners, their agents, servants and/or employees, including but not limited to their officers, supervisors, physicians, nurses, physician's assistants, therapists, specialists, administrators, and transportation personnel, knew that Plaintiff had sustained serious and significant physical injuries from the incidents alleged aforesaid.

235.     Plaintiff made numerous complaints to the defendants that he was injured, that he was in a tremendous amount of pain, and that he was experiencing other serious ailments following the subject incidents.

236.     Plaintiff made numerous requests for sick call, transportation to an off-site hospital, and/or examination by a specialist.  Said defendants regularly and routinely denied and/or delayed Plaintiff's requests.

237.     The defendants are the initial stewards of Plaintiff's access to medical care – possessing, *inter alia*, exclusive or near-exclusive control and decision-making authority as to if, when and how Plaintiff is permitted access to medical care, as well as approving and securing transportation to take Plaintiff from jail to an off-site medical provider.  These defendants are also charged and required to strictly follow medical orders from the medical providers.

238.     Defendants' agents, servants and/or employees, including but not limited to physicians, nurses, physician's assistants, therapists, and specialists, were, *inter alia*, personally involved in Plaintiff's medical care, responsible for performing physical examinations of Plaintiff and ordering appropriate tests, responsible for prescribing appropriate medications,

responsible for referring Plaintiff for examination and evaluation by a specialist, ensuring Plaintiff receives timely and appropriate follow-up care, and being otherwise cognizant of Plaintiff's medical condition, treatment and needs.

239.    By the aforesaid conduct and under the color of law, these defendants acted with malice, or at least deliberate indifference, in failing to timely secure the medical attention required for Plaintiff's serious injuries, in a manner that deprived the Plaintiff of his constitutional and statutory rights and perpetuated and exacerbated his physical and mental pain and suffering.

240.    By the aforesaid conduct, these defendants were negligent, careless and reckless in failing to timely secure the medical attention required for Plaintiff's serious injuries.

241.    By delaying and/or failing to act, said defendants knowingly disregarded an excessive risk to Plaintiff's health and safety.

242.    Any reasonable person would perceive Plaintiff's medical needs to be important and worthy of treatment.

243.    Said defendants denied and/or delayed Plaintiff's access to timely and necessary medical personnel, treatment and qualified medical practitioners (i.e., failed to timely refer Plaintiff to qualified medical practitioners despite Plaintiff's repeated complaints described above); failed to inquire into facts necessary to make a professional judgment (i.e. grossly perfunctory examinations of Plaintiff and his complaints; failure to inquire into delay and/or refusal to approve visit to hospital, clinic and/or surgery); failed to carry out medical orders (e.g., refusal to continue prescribed puree diet); permitted non-medical factors to interfere with their medical judgment (i.e., cost and inconvenience of visits to specialist, therapist and surgery; security concerns; hope or belief that Plaintiff would be removed from their custody shortly;

understaffing; and systemic deficiencies in staffing, facilities, or procedures resulting in Plaintiff's unnecessary suffering); failed to take steps to prevent the Plaintiff's condition from degenerating; exercised such bad judgment that an easier and less efficacious treatment was consciously chosen by these defendants (i.e., prescribing medications for Plaintiff's pain rather than resolving the cause of the pain); and their conduct was so grossly incompetent, inadequate, and excessive as to shock the conscience, and was so intolerable to fundamental fairness.

244.   As set forth above, the delay and/or denial of access to timely medical care by the defendants was intentional and punitive so as to cause the Plaintiff further physical injury, pain and suffering.

245.   As set forth above, the delay and/or denial of access to timely medical care by the defendants was negligent and reckless so as to cause the Plaintiff further physical injury, pain and suffering.

246.   As a direct and proximate result of said defendants' conduct, the plaintiff was caused to sustain further physical, psychological and emotional injuries, pain and suffering.

247.   As set forth above, the acts and omissions committed by the defendants were the result of policies and customs drafted and/or promulgated by the City, NYPD and/or DOC.

248.   The defendants were grossly negligent in supervising their subordinates, physicians, nurses, therapists, staff and officers who committed the wrongful acts alleged herein.

249.   The defendants failed to adequately investigate Plaintiff's claims of delayed and/or denied medical care and treatment.

250.   The defendants failed to adopt policies and procedures that would have prevented the delays and/or denials of medical care and treatment alleged herein.

251.    The defendants knew that the pattern of abuse described above existed.  Their failure to take measures to curb this pattern of conscious neglect constitutes acquiescence in the known unlawful behavior of its subordinates.  The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action despite the fact that the aforesaid conduct has been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of Plaintiff.

252.    The aforesaid acts of the defendants, their agents, servants and/or employees, were sufficiently serious to constitute violations of Plaintiff's statutory, civil and common law rights secured by the Constitution of the State of New York, as well as the New York Health Law, New York Corrections Law, New York Human Rights Law, New York Executive Law, and the common law of New York, and directly and proximately damage the claimant.

253.    As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries.

**SEVENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
_____

254.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "253", inclusive, of this Amended Complaint, as if same were fully set forth herein.

255.    The aforesaid acts of the defendant police officers, acting individually and/or in conjunction with the other defendants, were intentional, malicious and excessive, and served no reasonable or legitimate penological interest.

256.    The aforesaid acts of the defendant police officers, acting individually and/or in conjunction with the other defendants, were negligent and served no reasonable or legitimate penological interest.

257.    The defendant police officers' intentional, reckless and/or negligent infliction of emotional and mental distress constituted misconduct of an egregious and outrageous nature that exceeds all bounds usually tolerated by society and unreasonably endangered Plaintiff's physical safety.

258.    As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries.

### EIGHTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### FAILURE TO PROTECT

259.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "258" inclusive, of this Amended Complaint, as if same were fully set forth herein.

260.    As set forth above, all defendants failed to protect Plaintiff from known and foreseeable harms, including themselves and each other.

261.    As set forth above, the defendants caused and created the dangerous conditions which gave rise to the incidents and injuries alleged herein.

262.    As set forth above, each of the defendant officers failed to intervene, mitigate and/or stop the subject incidents at any time during the happening of the incidents.

263.    As set forth above, all defendants knew of and consciously disregarded excessive risks to Plaintiff's security, health and safety.

264.    That due to said defendants' repeated failures to protect the plaintiff, he suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

### NINTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### FALSE ARREST, FALSE IMPRISONMENT AND MALICIOUS PROSECUTION
_____

265.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "264" inclusive, of this Amended Complaint, as if same were fully set forth herein.

266.    As set forth above, Defendants PO Brown and PO Ortiz did file false criminal charges against Plaintiff, resulting in Plaintiff being re-arrested, prosecuted and imprisoned.

267.    All charges against Plaintiff were ultimately dismissed in his favor.

268.    Due to said defendants' conduct, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, loss of liberty, and pecuniary loss.

### TENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### PRIMA FACIE TORT
_____

269.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "268" inclusive, of this Amended Complaint, as if same were fully set forth herein.

270.    The aforesaid conduct of the defendants, their agents, servants and employees, as well as their delay and failures to act, caused harm to be inflicted upon the plaintiff out of disinterested malevolence and were the proximate cause of the injuries and damages suffered by the plaintiff.

271.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues in this matter.

### RELIEF

Plaintiff requests compensatory damages against all defendants in an amount to be determined at trial, punitive damages against the individual defendants in an amount to be

determined at trial, attorney's fees, costs and disbursements pursuant to law, and such other and

further relief as this Court deems just and proper.

Dated: Brooklyn, New York
          October 22, 2015

Yours, etc.,

**HELD & HINES, L.L.P.**

/s/
_____
By: Philip M. Hines, Esq.
*Attorneys for Plaintiff*
Office and P.O. Address
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com

## **ATTORNEY VERIFICATION**

PHILIP M. HINES, an attorney duly licensed to practice in the courts of the State of New York, hereby affirms the following under penalties of perjury:

That I am a member of the law firm of HELD & HINES, L.L.P., attorneys for the plaintiff in the within action; that I have read the foregoing SECOND VERIFIED AMENDED COMPLAINT and know the contents thereof; and that the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters, I believe them to be true. The reason this Verification is made by me and not by the plaintiff is that said plaintiff resides outside of the County in which the Affirmant's office is located.

The grounds of my belief as to all matters stated upon my own knowledge are as follows: the records, reports, contracts, and documents contained in the plaintiff's file.

/s/

_____

PHILIP M. HINES, ESQ.

Affirmed to this 22nd
day of October, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
TYSON POULOS,

                                                      Docket No. 14 CV 3023 (LTS)

                      Plaintiff,

       -against-

CITY OF NEW YORK, POLICE OFFICER JAMEL
BROWN, Shield No. 10416, individually and in his official
capacity, POLICE OFFICER JUANA ORTIZ, Shield No.
8870, individually and in her official capacity,
CORRECTION OFFICER SUBERNIA GORDON-
HACKSHAW, Shield No. 12727, individually and in
his/her official capacity, CORRECTION OFFICER
GREGORY JERRICK, Shield No. 5217, individually and
in his official capacity, CORRECTION OFFICER
PATRICIA THOMPSON, Shield No. 3174, individually
and in her official capacity, CORRECTION OFFICERS
JOHN DOE, fictitious names used to identify presently
unknown correction officers, individually and in their
official capacities, and CHRISTOPHER MCFADDEN,

                      Defendants.
---------------------------------------------------------------------X

## SECOND VERIFIED AMENDED COMPLAINT

**HELD & HINES, LLP**
**Attorneys for Plaintiff(s)**
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

                             **Signature (Rule 130-1.1-a)**

                                  /s/

                  _____

                  **PHILIP M. HINES, ESQ.**